ARLENE DICKERSON *v.* COE DICKERSON

5-4305                                                   419 S. W. 2d 608

Opinion delivered October 23, 1967

*Edgar E. Bethell,* for appellant.

*Jack Rose,* for appellee.

GEORGE ROSE SMITH, Justice. This is a suit for divorce brought by the appellant, Arlene Dickerson, on the ground of personal indignities rendering her condition in life intolerable. The chancellor dismissed the complaint, finding that even though it is probably impossible for the parties to continue to live together the plaintiff failed to prove her asserted ground for divorce.

The only issue here is whether that conclusion is against the weight of the evidence.

The couple was married in Ozark in 1948, when he was 21 and she was 17. They were living in Fort Smith when they separated nineteen years later. Pretty much by common consent the husband moved to an apartment, allowing his wife to occupy the family home with their two children, a boy of 18 and a girl of 15. Since the separation Dickerson has voluntarily contributed $150 a month to the support of his family.

Mrs. Dickerson disclaims any suggestion of violence, physical abuse, or infidelity on the part of her husband. Her grievances are twofold: First, she blames him for the couple's difficulty in really communicating with each other for some time before their estrangement. Secondly, she considers her husband's handling of the family finances to have been so niggardly and tyrannical as to amount to an intolerable affront to her dignity and peace of mind. Mrs. Dickerson testified that for a year or more before the separation she was under such nervous tension that she broke out with hives and was compelled to take tranquilizers for relief. Her condition improved materially after her husband moved out of the house.

Upon the first point Mrs. Dickerson testified that when she tried to discuss their problems Dickerson would refuse to talk about their difficulties and would instead read the paper or leave the house. Dickerson denied that testimony, saying that during their entire married life there were only one or two occasions when he refused to talk with his wife. On the other hand, he accuses her of having declined to discuss financial matters (which were evidently of abnormal importance to him).

It is fair to say that by far the greater part of this couple's unhappiness stemmed from money mat-

ters. Both have been employed for a number of years. At the time of the trial Dickerson's take-home pay was about $555 a month and Mrs. Dickerson's was about $65 a week. Dickerson has long taken the position that he and his wife should each bear a definite part of the family expenses. His responsibility has included the purchase of food, payments on the house, insurance, utility bills, his own personal expenses, and part of the children's clothing and school expenses. His wife's part in the family financial scheme has embraced the purchase of her clothes, the acquisition of some furniture, payments upon her car, and lesser matters that we need not detail.

It is quite apparent that for the past two or three years what Mrs. Dickerson calls her husband's obsession about money has been a constantly growing source of irritation to her. For a while the couple maintained a joint bank account, but if Mrs. Dickerson wanted to write a check for an outlay that Dickerson regarded as her personal responsibility he required her to pay him the amount of the check in cash. She finally opened her own account. Again, Dickerson customarily picked up and paid for only his own dry cleaning, leaving his wife to make extra trips to get the rest of the family cleaning. Dickerson has undoubtedly been somewhat secretive about his own income and bank accounts—all part and parcel of the undue emphasis he appears to place upon financial security.

We are not convinced that Dickerson's peculiarities in the management of the family's pecuniary problems should be declared to constitute habitual and intolerable personal indignities to his wife. This case is typical of those in which the chancellor's opportunity for reaching the right decision is immeasurably superior to ours. Even though he concluded that the parties' clash of personalities is so great that they are not likely to be able to continue to live together, "such a situation does not warrant the granting of a divorce in the absence

of proof that a statutory ground therefor exists."
*Lipscomb* v. *Lipscomb*, 226 Ark. 956, 295 S. W. 2d 335
(1956). Dickerson testified positively that he loves his
wife and always will. His attitude may well have been
regarded by the chancellor as decidedly more concilia-
tory than that of his wife. With the testimony in con-
flict upon many pivotal points, we are not able to say
that the trial court's decision is against the weight of
the evidence.

The appellee is directed to pay the appellant's court
costs and briefing expense, together with an additional
attorney's fee of $250.

Affirmed.

HARRIS, C. J., and BROWN, J., dissent.